IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONITA L. POUNDS,    )
                     )
        Plaintiff,   )
                     )
    v.               )    Civil Action No. 13-440
                     )
CAROLYN W. COLVIN,   )
ACTING COMMISSIONER OF )
SOCIAL SECURITY,     )
                     )
        Defendant.   )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 4th day of August, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, denied. The Commissioner's decision of January 26, 2011, will be vacated and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her pending application for benefits on August 10, 2009, alleging a disability onset date of December 1, 2008, due to depression. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on January 12, 2011, at which plaintiff, represented by counsel, appeared and testified. On January 26, 2011, the ALJ issued a decision finding that plaintiff is not disabled. On August 2, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 43 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has a limited education as she completed the eleventh grade but has not obtained a GED. 20 C.F.R. §416.964(b)(3). Plaintiff has past relevant work experience as a hostess and a telemarketer, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of major depressive disorder, mood disorder, bipolar disorder, schizo-

affective disorder and personality disorder,[1] those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains "the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to low-stress jobs, and cannot interact with the public." (R. 20). Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including janitor, assembler and packer. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

---

[1] The ALJ further noted that the "evidence is replete with references to alcohol and cocaine use." (R. 18). However, the ALJ concluded that plaintiff's history of substance abuse is not material to the determination of disability because she would continue to have severe mental impairments even in the absence of such use. Id.

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises two challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ's residual functional capacity finding failed to account for all of plaintiff's work-related limitations supported by the record; and, (2) the ALJ failed to explain his rejection of the opinion of the consultative examiner that plaintiff has marked and/or extreme limitations in a number of work-related mental activities. Because the court believes that the ALJ's residual functional capacity finding is inadequate to accommodate all of plaintiff's limitations that the ALJ himself recognized, this case must be remanded for a clarification of that finding.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §416.920(f). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §416.945(a); SSR 96-8p.

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(3)-(4); SSR 96-8p. In regard to mental abilities, the ALJ first must assess the nature and extent of the claimant's mental limitations and restrictions and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §416.945(c). The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

In this case, in assessing plaintiff's residual functional capacity the ALJ considered all of the relevant medical evidence including, *inter alia*, reports from Dr. Marvin Wheeler, the consultative examiner, and Dr. Kerry Brace, the state agency reviewing consultant. Dr. Wheeler, following a psychological disability evaluation conducted on November 23, 2009, concluded that plaintiff's "ability to carry out work related activities such as understanding, retaining and following instructions is a serious limitation as is her ability to sustain attention to perform simple repetitive tasks at this time." (R. 365). He also opined that her "ability to tolerate the stress and pressures associated with day to day work type activities is considered a major limitation." (Id.) In addition, Dr. Wheeler completed a medical source statement in which he indicated that plaintiff suffers from moderate limitations in her ability to carry out short, simple instructions and her ability to interact appropriately with the public, marked limitations in her ability to understand and remember detailed instructions and her ability to interact appropriately with co-workers and supervisors, and extreme limitations in her ability to

carry out detailed instructions, to make judgments on simple work-related decisions, and to respond appropriately to work pressures and changes. (R. 366).

Dr. Brace, upon a review of the record including Dr. Wheeler's report, determined that plaintiff has marked limitations in her ability to understand, remember and carry out detailed instructions (R. 386), and moderate limitations in a number of other areas related to sustained concentration and persistence, social interaction and adaptation. (R. 386-387). Dr. Brace believed that Dr. Wheeler's opinion regarding plaintiff's abilities in the area of making "performance adjustments" was fairly consistent with the other evidence in the file, but believed that the other limitations found by Dr. Wheeler as to plaintiff's abilities in the area of making personal and social adjustments and other work related activities "is an overestimate of the severity of her limitations." (R. 388). Dr. Brace concluded that plaintiff "can perform simple, routine, repetitive work in a stable environment" and that she can "understand, retain and follow simple job instructions, *i.e.*, perform one and two step tasks." (R. 388).

To the extent both Dr. Wheeler and Dr. Brace found "marked" limitations in plaintiff's ability to perform any work-related functions, the ALJ found that the record did not support those findings. (R. 28). However, the ALJ did acknowledge "limitations in social functioning [and] concentration, persistence and pace, as reported by [plaintiff] and observed by [Dr. Brace, Dr. Wheeler] and other examining sources," and he determined that his residual functional capacity finding addresses those limitations by restricting plaintiff to "low stress jobs, and cannot interact with the public." (Id.).

Although plaintiff argues that the ALJ did not adequately explain his rationale for rejecting the marked and extreme limitations found by Dr. Wheeler, the court is satisfied that

the ALJ adhered to the appropriate standards in evaluating the medical evidence[3] and that substantial evidence in the record supports the ALJ's treatment Dr. Wheeler's report.

Dr. Brace, the state agency reviewer,[4] disagreed with Dr. Wheeler's opinion of marked and extreme limitations in multiple areas, noting that Dr. Wheeler's report "reveals only a snapshot of [plaintiff's] functioning" and overestimates the severity of her limitations. (R. 388). Moreover, Dr. Wheeler himself acknowledged in his report that plaintiff was "limitedly [sic] cooperative and considered less than an adequate historian," and further noted that the "veracity of her responses appears questionable." (R. 362; 364). In addition, the ALJ emphasized that the record as a whole "documents appropriate social behavior, and intact memory, concentration, cognition and thought processes with treatment compliance." (R. 28).[5]

---

[3] Under the Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.927(d). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §416.927(e); SSR 96-5p.

[4] State agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(f)(2)(ii); SSR 96-6p.

[5] In this regard, Plaintiff argues that the ALJ failed to adhere to SSR 82-59, which governs the evaluation of a claimant's failure to follow a prescribed treatment plan. As the Commissioner aptly notes, however, SSR 82-59 applies to an "individual who otherwise would be found to be under a disability" and who "fails without justifiable cause to follow treatment" which "can be expected to restore the individual's ability to work." SSR 82-59. Under SSR 82-59, a denial of benefits for failure to follow a prescribed treatment plan may only be issued *after* the ALJ finds a disabling impairment that precludes engaging in *any* substantial gainful activity. Here, the ALJ did not so find and did not deny benefits due to plaintiff's non-compliance with treatment. Instead, the ALJ appropriately considered plaintiff's noncompliance with treatment in assessing the limiting effects of plaintiff's symptoms, which he is authorized to do under 20 C.F.R. §416.929(c)(3)(iv) and (v) and SSR 96-7p. (ALJ may consider effectiveness of medication and other treatment in determining intensity, persistence and limiting effects of symptoms). See Vega v. Commissioner of Social Security, 358 Fed.Appx. 372, 375 (3d Cir. 2009).

Based upon his review of the <u>entire</u> record, the ALJ concluded that plaintiff's impairments, while severe, do not result in the marked and extreme limitations set forth by Dr. Wheeler in his medical source statement. Because that opinion was not supported by the objective medical evidence and was inconsistent with other substantial evidence in the record, the ALJ did not err in rejecting it. 20 C.F.R. §416.927(d); SSR 96-2p.

While properly rejecting the conclusion that plaintiff suffers from marked or extreme limitations in any work-related functions, the ALJ nevertheless acknowledged that plaintiff does have some "limitations in social functioning [and] concentration, persistence and pace" as reported by plaintiff and observed by Dr. Wheeler and Dr. Brace, which the ALJ believed he addressed by limiting plaintiff to "low stress work" and no interaction with the public. Plaintiff argues that these limitations are inadequate to account even for plaintiff's "moderate" limitations in social functioning and concentration, persistence and pace which both Dr. Brace and Dr. Wheeler recognized. The court agrees and finds that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert do not adequately accommodate plaintiff's moderate limitations in social functioning and concentration, persistence and pace, necessitating a remand.

With regard to understanding, concentration and adaptability, the medical evidence in this case from both Dr. Wheeler and Dr. Brace demonstrates that plaintiff has at least moderate limitations in her ability: to carry out short, simple instructions; to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with others without being distracted; to make simple work-related decisions; to complete a normal workday without interruptions at a consistent pace; to respond appropriately to changes in the work-setting; and, to set realistic goals or make plans

independently of others. (R. 366; 387). As to social functioning and interaction, the medical evidence from Dr. Wheeler and Dr. Brace demonstrates that plaintiff has at least moderate limitations in her ability to interact appropriately with the general public <u>and</u> in her ability to interact appropriately with supervisors and co-workers. (R. 366; 387).

In his decision, the ALJ acknowledges that plaintiff has limitations in social functioning and concentration, persistence and pace, yet he attempted to account for all of the foregoing difficulties merely be limiting plaintiff to "low stress work" and no interaction with the general public. The court does not believe that the ALJ's finding is adequate to account for <u>all</u> of plaintiff's limitations as observed by the medical sources.

For example, while "low stress work" may be sufficient to account for plaintiff's difficulties in adapting appropriately to work pressures or changes in a usual or routine work setting, it certainly does not account for plaintiff's difficulties in regard to concentration, persistence and pace as outlined in the medical source statements of Dr. Wheeler and Dr. Brace, which, again, were accepted by the ALJ. Case law in this circuit makes clear that in order to accommodate <u>moderate</u> limitations in concentration, persistence and pace, a residual functional capacity finding should, <u>at a minimum</u>, contain a restriction limiting the individual, <i>e.g.</i>, to "simple, routine tasks." See, e.g., <u>Parks v. Commissioner of Social Security</u>, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work with restricted social interactions adequate to account for moderate limitations in social functioning and concentration, persistence and pace); <u>McDonald v. Astrue</u>, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); <u>Menkes v. Astrue</u>, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical

restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Likewise, while acknowledging plaintiff's limitations in social functioning, and accounting for her inability to deal with the general public in the residual functional capacity finding, the ALJ made no accommodation for plaintiff's inability to interact appropriately with co-workers or supervisors, limitations that also are supported by the reports of Dr. Brace and Dr. Wheeler and which were recognized, at least implicitly, by the ALJ.

The ALJ's residual functional capacity finding in this case attempts to accommodate plaintiff's moderate limitations in social functioning and concentration, persistence and pace merely by limiting plaintiff "low stress work" and "no interaction with the public." This court finds the ALJ's finding inadequate to account for plaintiff's moderate limitations in those areas. Cf., Vokes v. Colvin, 2014 WL 457763 (W.D.Pa. 2014)(S.J. Diamond) (ALJ's restriction of plaintiff to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; she is limited to occupations not involving high levels of stress, *i.e.*, requiring independent decision making or occupations subject to close supervision or close interaction with co-workers or the general public" adequately accounted for moderate limitations in social functioning and concentration, persistence and pace). Accordingly, this case must be remanded so that the ALJ may arrive at a new residual functional capacity finding that does account for all of plaintiff's limitations as supported by the record.

Because the ALJ's hypothetical to the vocational expert in this case incorporated his inadequate residual functional capacity finding, which failed to account for all of plaintiff's limitations supported by the record, substantial evidence does not support the ALJ's finding of

AO 72
(Rev. 8/82)

not disabled at step 5. Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004)(a vocational expert's response to a hypothetical that does not reflect all of a claimant's impairments that are supported by the record cannot be considered substantial evidence supporting a step 5 finding of not disabled ). Thus, after arriving at a new residual functional capacity finding that adequately accounts for all of plaintiff's limitations, the ALJ must then determine, through the testimony of a vocational expert, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and her revised residual functional capacity.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)